[Civ. No. 6485. Third Appellate District.—March 24, 1941.]

HENRY REITHARDT et al., Respondents, v. BOARD OF EDUCATION OF YUBA COUNTY et al., Appellants.

630

Archibald D. McDougall and Joseph L. Heenan for Appellants.

Carlin & Fuidge for Respondents.

THE COURT.—This is an action to recover damages for personal injuries suffered by plaintiff Dorothy Reithardt, who, while a student in Marysville Union High School, was injured as the result of a fall. Plaintiff Henry Reithardt is her father.

The complaint is in two counts. The first count is for general damages suffered by plaintiff Dorothy Reithardt; the second count, for special damages consisting of nurses, hospital and medical expenses incurred by plaintiff Henry Reithardt, the father of Dorothy Reithardt. The jury returned a verdict in favor of plaintiff Dorothy Reithardt in the sum of $1,000, and in favor of plaintiff Henry Reithardt in the sum of $1250, and against defendants Board of Education of Yuba County and Marysville Union High School District. Defendants thereafter moved for judgment notwithstanding the verdict, which motion was denied. Thereafter, judgment in favor of plaintiffs and against defendants was entered by the court on the verdict. The motion for new trial later made by defendants was also denied. This is an appeal from such judgment and from the order of the court denying defendants' motion for judgment notwithstanding the verdict.

At the time of the accident Dorothy was fifteen years of age. (We shall hereafter refer to her as "plaintiff".) The undisputed facts show that she was a member of the Freshman class of said school. On the morning of the accident, plaintiff had been dismissed from her second period, a glee club class, about 10:00 o'clock. She then proceeded to the dressing-room, changed her clothes, and went into the apparatus room to be present when the roll was called. There she talked with several classmates, and then went to the center window opening. She jumped up the short distance and seated herself on the ledge of the opening. She seated herself on the ledge in a firm manner, with her hands resting in her lap and her legs dangling over the side facing the apparatus room. Her legs were vertical to the floor and she was sitting there quietly talking to Mary Kelley, a fellow student. Suddenly and without any words of warning Margaret Thompson, another student, seized both of plaintiff's ankles, pulled her legs up horizontal to the floor, and jerked or pulled plaintiff forward off of her seat. In falling plaintiff's arm hit the floor, causing the injuries complained of.

Plaintiff testified that she was comfortably and firmly seated on the ledge, and that it was the act of her fellow student, Margaret Thompson, in grabbing hold and pulling her feet out that caused her to fall off the ledge. During the ten minute period intervening between the second and third classes, the gym teacher was in her office preparing for the next class. The accident happened just at the end of that ten minute intermission. The roll call bell had just rung, and the gym teacher had started from her office to the apparatus room when she met the girls bringing the plaintiff to her office.

Plaintiffs proceeded upon what are in reality two causes of action—the first, based upon negligence arising out of a breach of the Rules of State Board of Education, and the second, based upon negligence in allowing students (including plaintiff), to sit upon the window ledge in question. The liability of defendants, if any, is based on section 2.801 of the School Code of the State of California, which provides as follows:

"Boards of school trustees, high school boards, junior college boards and boards of education are liable as such in the name of the district for any judgment against the district on account of injury to persons or property arising because of the negligence of the district, or its officers or employees."

In other words, it is incumbent upon plaintiff to show that the injuries were received as a direct and proximate result of negligence on the part of the district, board, or their officers or agents.

■■■ Taking up the first ground for recovery, subdivision "D" of section 3 of the Rules and Regulations of said board, reads as follows:

"Where special playground supervision is not provided, teachers shall supervise the conduct and direct the play of the pupils of their classes in the school or on the school grounds during intermission and before and after school."

Appellants contend that the foregoing rule is not applicable to the facts of this case. We are in accord with that view. As we construe the word "intermission", used in the rule quoted, it refers, not to time which is consumed in going from one classroom to another, as the facts show here, but to a general cessation of all teaching activity in the school. The term might be applied to the period allowed for lunch,

which is designated as the "noon *intermission*" in subdivision "C" of section 1 of said Rules, and to the twenty minute recesses mentioned in said section. This construction follows, for the reason that section 3, subdivision "D" deals with the matter of *playgrounds* and *play*. The opening sentence is the key to the remainder of the section, showing that the intent was to deal with the supervision at intervals which might be used for school play. ▮ "Every statute and Code section should be construed with reference to its purpose and the objects intended to be accomplished by it." (23 Cal. Jur., p. 764, sec. 138.) Here, the purpose was to supervise play. It cannot be seriously or reasonably contended that the interval between classes (ten minutes here), could be devoted to play, as that word is used in school activities. To hold otherwise would not only be contrary to the obvious intent of the Rule, but would place upon the governing body of a school the onerous burden of employing additional teachers to follow the students about from class to class. We do not believe that the State Board of Education ever intended or contemplated such a result. ▮ If it can be said that the rule has a doubtful meaning, then "the court may take into consideration any great inconvenience which may result from a given construction." (23 Cal. Jur., p. 768, sec. 142.) "Interpretations must be reasonable." (Civ. Code, sec. 3542.) ▮ Reasonably construed, the section of the Rules last mentioned was intended to deal solely with play periods, and the conducting and directing of play during such intervals. It is impliedly conceded by both parties that said section has the force of law, and we are therefore governed by the rules of statutory construction. We conclude that there was no breach of the Rule shown at the trial, and therefore a cause of action based on this count was not made out. In the case of *Ogando* v. *Carquinez Grammar School Dist.*, 24 Cal. App. (2d) 567 [75 Pac. (2d) 641], the accident came squarely within the terms of the Rule. It occurred during a recess or intermission, while the pupils were at play. The case of *Buzzard* v. *East Lake School Dist.*, 34 Cal. App. (2d) 316 [93 Pac. (2d) 233], did not involve the Rule. (Sec. 3, subd. "D".) We there held that it was negligence to permit pupils to ride bicycles about the playground among the children while they were engaged in playing games. In the case of *Forgnone* v. *Salvador Union*

*Elementary School Dist.,* 41 Cal. App. (2d) 423 [106 Pac. (2d) 932], we held that the complaint stated a cause of action, where the allegations were that there was no supervision of pupils during the noon intermission, and the accident occurred during that period. We believe that the foregoing cases have given a reasonable and liberal interpretation of the Rule in question, and we are not prepared to hold that it should be extended to cover a situation which clearly was not within the contemplation of the State Board of Education when it was adopted.

As to the other ground urged by respondent, we do not believe that the evidence justified a recovery based upon the theory that allowing students to sit upon a window ledge of the character described is negligence. Respondents point to no evidence whatever indicating the dangerous character of the opening. The only possible evidence which can be drawn from the entire record to support its allegedly dangerous character is the fact that the respondent was injured by falling from the opening. But the evidence does not show that she fell because of any defect in the opening, or because of the way she was seated, or because she could not be securely seated, or because of any act or omission on the part of appellants. The evidence on this matter is definite, uncontradicted, and points to one conclusion, that the respondent fell from the opening only because her fellow student wilfully and deliberately pulled her from the opening. The window opening was about three feet wide and four feet high; the bottom or ledge, upon which respondent was seated, was three and one-half feet above the floor, and was about six or eight inches wide. The evidence was to the effect that students had been using the ledges as seats for twelve or thirteen years, and no student had fallen or been pulled or pushed from the ledges since the school had been built. In the opinion of the teacher and respondent (the only testimony on the matter), the ledges were not dangerous or hazardous places to sit.

Respondents contend that the question was one for the jury; that the window ledge presented a condition of danger, and defendants should have anticipated that an accident would arise by the use of said ledge as a seat by the pupils who were occupying the room. As we have stated, we do not believe that an ordinary school window of the type here involved, is

a condition which is a sign of danger, nor do we believe that defendants could reasonably anticipate that one high school pupil would seize another who was sitting upon the ledge and drag her suddenly to the floor. If such a contingency could not reasonably have been foreseen, no negligence is established. By the last statement (and wherever a similar statement is made) we do not mean to say that it was incumbent upon plaintiffs to prove that these defendants should have foreseen this very injury. Their negligence is established if a reasonably prudent person would have foreseen that injuries of the same general type would be likely to happen.

In *Weldy* v. *Oakland High School Dist.*, 19 Cal. App. (2d) 429 [65 Pac. (2d) 851], it is stated:

"The liability of a school district for injury to its students rests upon section 2.801 of the School Code (Stats. 1931, p. 2487), which permits recovery only when the injuries arise from 'the negligence of the district or its officers or employees'. The statute does not create a liability upon the district for injuries arising from the unlawful or wilful misconduct of its students (*Whiteford* v. *Yuba City Union H. S. Dist.*, 117 Cal. App. 462, 464 [4 Pac. (2d) 266], nor from injuries arising from the negligence of a fellow student (*Hack* v. *Sacramento City Junior College Dist.*, 131 Cal. App. 444, 448 [21 Pac. (2d) 477]; *McCloy* v. *Huntington Park Union H. S. Dist.*, 139 Cal. App. 237 [33 Pac. (2d) 882]; *Goodman* v. *Pasadena City H. S. Dist.*, 4 Cal. App. (2d) 65 [40 Pac. (2d) 854]; *Underhill* v. *Alameda Elem. S. Dist.*, 133 Cal. App. 733 [24 Pac. (2d) 849]; *Kerby* v. *Elk Grove Union H. S. Dist.*, 1 Cal. App. (2d) 246 [36 Pac. (2d) 431, 94 A. L. R. 1502]).

"To hold the school district liable for injuries received in this manner it is necessary to allege and prove that the district was guilty of some act of commission or omission amounting to negligence. Thus, if experience had demonstrated that a game of football was likely to be attended by rowdyism and injury to spectators the school district might be held bound to anticipate 'such consequences as a reasonably prudent man would anticipate as likely to result therefrom.' (*Katz* v. *Helbing*, 205 Cal. 629, 634 [271 Pac. 1062, 62 A. L. R. 825].) . . . It may be taken for granted that a school district is required to exercise reasonable su-

pervision over its students while the school is in session, but, even under such circumstances 'the law does not make school districts insurers of the safety of the pupils at play or elsewhere.' (*Goodman* v. *Pasadena City H. S. Dist., supra.*)''

■ In the instant case the act of the fellow student in dragging plaintiff from her seat is in no different category than the act of the student in the foregoing case—throwing objects during a school football game. Both of such acts were wilful misconduct upon the part of the student, and a school district cannot be held liable under such circumstances, since such acts could not reasonably have been foreseen by a person of ordinary prudence.

In the case of *Goodman* v. *Pasadena City H. S. Dist.,* 4 Cal. App. (2d) 65 [40 Pac. (2d) 854], a judgment in favor of a pupil and against a school district was reversed, where the accident occurred through the act of a fellow student in school shop. The latter was pounding aluminum when a fragment flew out and entered plaintiff's eye. It was charged that the school was negligent in not furnishing goggles to the students when they were thus engaged. The record discloses no proof that any school authority knew that aluminum shatters when pounded, although the pupils had been advised with reference to the striking together of steel implements. The students had all been advised to wear goggles when working around the emery wheel, but at no other work in the shop was it deemed advantageous to wear goggles for the protection of one's eyes. It is not shown that any instructor knew that goggles were necessary for the safety of a spectator within the shop. Quoting from that case: ''The negligence suggested by plaintiffs was the failure to require the pupils to wear goggles in the presence of the possible injury from flying particles of hammered metal. However, the record discloses no substantial evidence that there existed such danger which was known or ought to have been known to the authorities. 'The law does not make school districts insurers of the safety of the pupils at play or elsewhere, and no liability is enjoined upon a district under the above-mentioned section in the absence of negligence on the part of the district, its officers or employees.' (*Underhill* v. *Alameda Elementary School District,* 133 Cal. App. 733 [24 Pac. (2d) 849, 851] ; *Ellis* v. *Burns Valley School District,* 128 Cal. App. 550 [18 Pac. (2d) 79].)''

Several cases are relied upon by respondent. In *Stovall* v. *Toppenish Dist.*, 110 Wash. 97 [188 Pac. 12, 9 A. L. R. 908], a tank was left in the school yard. The pupils, in play, rolled the tank about, and one of them was injured. A judgment against the school was upheld. We believe, as the court held, that such contingency could reasonably have been foreseen. Nothing is more inviting to children at play than an object which can be rolled about. *Bruenn* v. *North Yakima School Dist.*, 101 Wash. 374 [172 Pac. 569], presents a case where there was inadequate supervision while pupils were playing with a ''teeter-board''. No dangerous condition of buildings was involved. Recovery was had on account of negligence arising out of lack of supervision during a play period. Such question is not presented here. In *Williams* v. *Board of Trustees,* 210 App. Div. 161 [205 N. Y. Supp. 742], a child on a crowded seat of a vehicle was pushed over a small rail and against a wheel. It was held that the turning wheel was a dangerous place, and it might be anticipated that the seat would some time be crowded with pupils. Certainly, all must admit that the wheel was a dangerous instrumentality which should have been adequately guarded. None of these cases go so far as to permit us to hold that this window ledge was a sign of danger, or that the situation here could reasonably have been anticipated.

We therefore conclude that the evidence on either cause of action is insufficient to sustain the verdict.

The judgment and the order are reversed.

Respondents' petition for a hearing by the Supreme Court was denied May 22, 1941.