168 Cal.App.2d 277 (1959)
IRENE MAY ZIEGLER, Appellant,
v.
SANTA CRUZ CITY HIGH SCHOOL DISTRICT et al., Respondents.
Civ. No. 17954. 
California Court of Appeals. First Dist., Div. One. 
Mar. 2, 1959.
 Dent E. Snider, J. Frank Murphy and Eugene J. Adams for Appellant.
 Lucas, Wyckoff & Miller for Respondents.
 BRAY, J.
 Plaintiff appeals from judgment of nonsuit in favor of defendants in an action for damages for the death of plaintiff's minor son on school property. The complaint contained two grounds for recovery, one based upon the Public Liability Act (Gov. Code, 53051, dangerous and defective condition of public property); the other based on alleged negligence in failing to adequately supervise their students.
 Questions Presented
 Was the evidence insufficient to show (1) a dangerous and defective condition; (2) negligent supervision?
 Evidence
 The school building houses elementary and junior high school students. The playground areas and the exits to them are separate for each group. The accident occurred at the rear entrance to the junior high school, where the doors open onto a landing from which nine steps lead down to the playground area. The landing and steps are guarded by an iron handrail on each side. The handrail is 33 inches high and 2 1/4 inches wide at the top. It is supported by bars arising from each step. Adjacent to the stairs and railing on one side is a concrete stairwell leading to the basement of the building. The distance from the top of the railing to the bottom of the stairwell is 12 1/2 feet.
 Leonard Evans, plaintiff's deceased son, was 13 years, 7 months old and in the 8th grade of the junior high school. On the day in question he had attended a dance in the school and during the dance the school principal, Mr. Miller, observed *280 Leonard in horseplay with a 9th grade student, Richard. Leonard poked Richard in the ribs a few times. When the students were dismissed, Leonard proceeded out onto the stair landing where he placed his right buttock on the railing adjacent to the stairwell with one foot on the landing and one foot dangling. At this time Richard came out on the landing. Two 8th graders testified that Richard raised his arms as though to push Leonard. It is not clear from the evidence whether Richard actually pushed Leonard over or that, in endeavoring to avoid Richard, Leonard leaned backward and lost his balance. Leonard fell over the railing and into the stairwell. Leonard died from the injuries received in the fall.
 1. Was There a Dangerous or Defective Condition?
 [1] The court having granted a nonsuit, our duty is to determine whether there is any substantial evidence, or any reasonable inferences from the evidence, which would have supported a judgment in favor of plaintiff. [2] There was nothing inherently dangerous or defective about the railing, the landing or the steps, if the landing and steps were used for the purposes for which they were intended; namely, exit from and entrance to the building. Although the landing and the stairway were heavily trafficked by students coming and going in the building, they were perfectly safe if used in the normal and customary way. According to Mrs. Prince, one of the teachers who had taught at the school for the past 10 1/2 years, no one had ever fallen over the railing. The railing was of standard construction under the Uniform Building Code. Apparently it was a railing of the type used in many schools which have steps leading into a building or even steps from one floor of a building to another floor. There was evidence that to the knowledge of the school people during a period of about two years the railing had been occasionally used by students for partially sitting on and leaning against. The principal and Mrs. Prince both testified to having seen students doing so. The principal had directed teachers and students to keep the area clear, although there was no specific cautioning against sitting on the railing. Two students testified to the occasional practice of sitting on the railing. One of them stated that he had once seen in the daily bulletin a warning against doing so.
 Plaintiff contends that this occasional use to the knowledge of the school people constituted the railing a dangerous and defective one. We do not agree. [3] A dangerous or defective condition is one from which it reasonably would be anticipated *281 that injury would occur to those coming into contact with the condition. (Jones v. City of Los Angeles (1951), 104 Cal.App.2d 212, 215 [231 P.2d 167].) This interpretation is not limited to property originally so designed as to be inherently dangerous in its ordinary and customary use. Its actual use may cause the property to constitute a dangerous or defective condition. Thus, in Bauman v. City & County of San Francisco (1940), 42 Cal.App.2d 144 [108 P.2d 989], the court held that a dangerous condition existed where the defendant permitted baseball to be played on its playground without erecting a barrier for the protection of small children playing in an adjacent sandbox. [4] "There can be no doubt that a dangerous or defective condition can be created by the use or general plan of operation of government operated property, as well as by a structural defect." (P. 153.) [5] The court pointed out that no hard and fast rule can be laid down as to what constitutes a dangerous or defective condition but that each case must depend upon its own state of facts. [6] It further stated that it is well settled that as a general rule the question is one of fact for the jury to determine.
 In Gallipo v. City of Long Beach (1956), 146 Cal.App.2d 520 [304 P.2d 106], a small boy fell from a pipeline, about a foot in diameter, adjacent to a bridge over a railroad right of way. No walkway had been provided for pedestrians on the bridge. Paths appeared to lead from the highway to the pipeline. The city knew that children were crossing on the pipeline and that the only action taken to guard against this practice was to set up a kind of barricade at a halfway point along this route. In holding that the manner in which the city operated and maintained the bridge constituted a dangerous or defective condition, the court stated that the use of the pipeline as a crossing was so closely connected with or in such proximity to the bridge as to make the city liable for that use. "Additionally, where children of tender years are exposed to hazard by the manner of operation or maintenance of a municipal facility, the failure of the city to provide a barrier to prevent injury at the point or from the source of danger has been held to constitute a dangerous condition within the statute." (P. 528.) See Teilhet v. County of Santa Clara, 149 Cal.App.2d 305, 307 [308 P.2d 356], for discussion of the rule that the use of public property may constitute a dangerous or defective condition of the property. However, in those cases the use which made the property *282 dangerous was more than the occasional use proved in this case. As conceded by plaintiff at oral argument, the use being made of the railing by Leonard would not have been dangerous were it not for the pushing or the attempted pushing by his fellow student. The situation is similar to that in Woodman v. Hemet Union High School Dist., 136 Cal.App. 544 [29 P.2d 257], where the dilapidated truck which the boys were allowed to use was in a defective condition, yet the court held that under the Public Liability Act "a public agency should only be held liable for damages resulting from the defective condition of its property in its ordinary, usual and customary use. ..." In Howard v. City of Fresno, 22 Cal.App.2d 41 [70 P.2d 502], a trash burning area was maintained in close proximity to the children's playground. The court pointed out that there was no evidence that any person prior to the accident in question had ever been injured or burned there, and the area was not intended for children to play in. The court said that the burning area was safe for the purpose for which it was intended--the burning of trash by park employees--and that "the question of the dangerous character of a defective condition depends largely on the intended lawful use of the property." (P. 45.) In Betts v. City & County of San Francisco, 108 Cal.App.2d 701 [239 P.2d 456], a boy climbed over a picket fence and descended the concrete spillway to get a drink of water from a pipe emptying into it. The main theory of the case was that an attractive nuisance was being maintained. The court held that that theory did not apply nor was the defendant liable under the Public Liability Act. It quoted from Beeson v. City of Los Angeles, 115 Cal.App. 122, 132 [300 P. 993], to the effect that the Legislature intended in passing that act to limit the liability of a public agency for damages resulting from defective property to " '... damages suffered in the ordinary, usual and customary use thereof.' " (P. 704.) In Ford v. Riverside School Dist., 121 Cal.App.2d 554 [263 P.2d 626], an elementary school pupil was pulling thorns from a palm tree on the school premises. In doing so he caused a thorn to enter the eye of a fellow pupil. It was known to the school people that pupils occasionally played in this area, although they had been frequently notified not to do so. The court reviewed a number of cases on the subject and reiterated the rule above expressed, that to constitute a dangerous or defective condition under the Public Liability Act, the property must be dangerous or defective when considered in its ordinary *283 and customary use. In our case leaning against or sitting on the railing was not the ordinary or customary use of the railing.
 The following cases in which it was held that the Public Liability Act did not apply are somewhat analogous in that in each the property was not inherently dangerous, but, as in our case, only became dangerous when used in other than the customary and ordinary way: Hough v. Orleans etc. School Dist. (1943), 62 Cal.App.2d 146 [144 P.2d 383], where a student ran into a bolt projecting from a flagpole on school grounds; Schmidt v. City of Vallejo, 122 Cal.App. 5 [10 P.2d 107], minor fell off a playground slide; Luna v. Needles etc. School Dist., 154 Cal.App.2d 803 [316 P.2d 773], where a pupil's finger was pinched in a gate swung by a fellow pupil. Reithardt v. Board of Education, 43 Cal.App.2d 629 [111 P.2d 440], also cited by defendant, did not involve the Public Liability Act. It involved a charge of negligent supervision in allowing students to sit on a window ledge which was about 3 1/2 feet above the floor. A student pulled a fellow student off the window and on to the floor, injuring her. The evidence showed that students customarily sat on the window ledges and the evidence showed that they were not hazardous or dangerous places to sit. The uncontradicted evidence was that students sitting there were securely seated and could not fall. The court said "... we do not believe that an ordinary school window of the type here involved, is a condition which is a sign of danger, nor do we believe that defendants could reasonably anticipate that one high school pupil would seize another who was sitting upon the ledge and drag her suddenly to the floor." (Pp. 634-635.)
 2. Supervision.
 [7a] The complaint additionally alleged negligent maintenance, control and supervision of the premises and the students.
 Section 1007, Education Code, permits recovery from a school district for injury to person or property "arising because of the negligence of the district, or its officers, or employees. ..." In addition to the evidence hereinbefore set forth, the principal testified that because the landing and stairway was a heavily trafficked area, he had directed teachers and students to keep the area clear, although there was no specific cautioning against sitting on the railing. Mrs. Prince testified that she had warned students about leaning against *284 the railing. Two students testified that occasionally they had observed students sitting on the railing. One had never been warned against it by a teacher, although he had heard from other students that there had been warnings. The other had seen a warning once in the bulletin. Three teachers were assigned to supervisory duty in the area, one in the hall and two in the school yard. One of these teachers was in the hall at the time of the accident. The evidence fails to show where the other teachers who were assigned to yard duty were.
 There was sufficient evidence from which a jury could have concluded that, with the knowledge the school had of the fact that students occasionally sat on and leaned against the railing, the foreseeability of this type of accident was reasonable and it would be for the jury to determine whether to guard against such an accident the school warnings were sufficient and whether or not there should have been supervision of the students as they left the building and went down the stairway. While Leonard had been sitting on the railing an appreciable length of time, Richard's action, which caused the accident, was a sudden one. It was a jury question whether proper supervision would have stopped Leonard from sitting on the rail and would reasonably have prevented the accident. If the jury should find that Leonard's injury was of the same general type likely to occur in the absence of safeguards, Richard's intervening act would be no more than a concurring cause.
 [8] School authorities have a duty to supervise at all times the conduct of children on the school grounds. A school district may thus be liable for failure of its officers or employees to use ordinary care in this respect. [9] It is not necessary to prove that the very injuries which occurred must have been foreseeable; merely that a reasonably prudent person would foresee that injuries of the same general type would be likely to occur in the absence of adequate safeguards. (Taylor v. Oakland Scavenger Co. (1941), 17 Cal.2d 594, 600 [110 P.2d 1044].) However, there must be a proximate causal connection between the inadequacy of the supervision and the accident. (Forgnone v. Salvador U. E. School Dist. (1940), 41 Cal.App.2d 423, 426 [106 P.2d 932].) [10] Whether or not a school district is negligent in providing adequate supervision is ordinarily a question of fact. (Rodrigues v. San Jose Unified School Dist. (1958), 157 Cal.App.2d 842, 845 [322 P.2d 70].)
 [7b] Courts have said that no liability devolves on a school *285 district for personal injuries arising from the unlawful or wilful misconduct or negligence of a fellow student.
 The fact that the principal did not anticipate any student falling over the railing and therefore in his directives to keep the landing clear he had in mind only the facilitating of the flow of traffic and even though no accident had theretofore occurred are not conclusive on the foreseeability which the jury might have reasonably determined he should have had. Defendant refers to Wright v. City of San Bernardino H. School Dist. (1953), 121 Cal.App.2d 342 [263 P.2d 25], which held that no negligent lack of supervision is shown where the accident is such that it could occur equally as well in the presence of a supervisor as in his absence. That principle is not applicable here, for the jury reasonably could have concluded that had a supervisor been where he could have observed the students using the landing and stairway as they left the dance, he would have instructed Leonard to get off the railing.
 The situation differs from that in Reithardt v. Board of Education, supra, 43 Cal.App.2d 629. In reversing a judgment in favor of the plaintiffs and an order denying a motion for judgment notwithstanding the verdict, the court said that the school people could not reasonably anticipate that one high school pupil would seize another who was sitting safely on the ledge and drag her suddenly to the floor. In our case the railing was not a safe place to sit and it was a jury question whether knowing that students did occasionally sit on or lean against the railing and knowing the heavy traffic at this point, and the propensity for students gathering on the landing (the principal testified that students would gather on the landing and he had issued directives to keep that area clear) it was not reasonably foreseeable that a student sitting on the railing might be jostled or might lose his balance. To make the school liable it is not necessary that the school people could have foreseen the particular accident that occurred, that is, that a student would push or attempt to push another over the railing, if a general danger was foreseeable and if the supervision necessary to avoid that general danger would reasonably have prevented the accident in question. As said in Charonnat v. San Francisco Unified School Dist., 56 Cal.App.2d 840, 844 [133 P.2d 643], where during a recess the plaintiff on the school ground got into an altercation with a fellow student during the course of which the latter twisted and broke plaintiff's leg, "Nor is it necessary that the very *286 injury which occurred must have been foreseeable by the school authorities or the yard supervisor in order to establish that their failure to provide adequate protection constituted negligence. 'Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of such safeguards.' " The court also stated (p. 844): " '... the purpose of the law requiring supervision of pupils on the playgrounds and on the school property during school hours is to regulate their conduct so as to prevent disorderly and dangerous practices which are likely to result in physical injury to immature scholars under their custody.' (Italics ours.) And in Buzzard v. East Lake School Dist., 34 Cal.App.2d 316 [93 P.2d 233], it was held that improper supervision of pupils on the school grounds may create a liability on the part of the school district for injuries received by one pupil on account of the recklessness of a fellow student while they were engaged in recreation on the premises during an intermission."
 In the present case the evidence is such that the jury could have found that there was a negligent omission on the part of defendants to provide adequate supervision of the conduct of the pupils and that had a supervisor seen Leonard sitting on the railing some serious injury would have been reasonably anticipated.
 Had the only ground of liability pleaded been that of alleged dangerous condition of the premises, the nonsuit would have been properly granted for failure to prove facts sufficient to prove such ground. However, under the second ground pleaded, namely, negligent supervision, the facts proved were sufficient to require submission to the jury and hence the nonsuit should not have been granted. The case will have to be remanded for retrial of the issue of alleged negligent supervision.
 The judgment is reversed.
 Peters, P. J., and Wood (Fred B.), J., concurred.