58 N.J. Super. 155 (1959)
155 A.2d 793
ROBERT DOKTOR, AN INFANT BY HIS GUARDIAN AD LITEM, BENJAMIN DOKTOR AND BENJAMIN DOKTOR, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
BARBARA ROTHBERG GREENBERG, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1959.
Decided November 23, 1959.
*156 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Morton Stavis argued the cause for plaintiffs-appellants (Messrs. Gross & Stavis, attorneys; Mrs. Mabel L. Richardson, of counsel).
Mr. Sidney Dincin argued the cause for defendant-respondent (Messrs. Reid & Flaherty, attorneys; Mr. Henry J. Bendheim, of counsel).
*157 The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff Robert Doktor, who was 12 years old and a seventh-grade student in the Engle Street Junior High School, Englewood, on February 15, 1957, brought this negligence action against a teacher in the school to recover for personal injuries, culminating in the loss of a leg, sustained when another student assaulted him. His father, Benjamin Doktor, sues as guardian ad litem and per quod. The defendant, Barbara Rothberg Greenberg (hereinafter "Miss Rothberg"), was in her first year of regular teaching, having commenced her duties in September 1956 after a short period of practice teaching. The complaint charges negligent supervision by her of the classroom which Robert was attending. The appeal is from a dismissal of the claim by the trial judge of the Law Division at the conclusion of plaintiffs' proofs.
During a lunch-hour change of classes, plaintiff, with two friends, was walking in a corridor in the direction of room 212 for an English class with Miss Rothberg. He saw defendant standing outside the room, at the door. She was looking in his direction. When Robert was about 15 feet from the doorway, John Joyce, another student whom Robert did not know, walked out of defendant's classroom and, in passing Robert in the corridor, "for no reason at all" punched him. Robert testified, "I didn't instigate this at all." The blow came without warning and took him by surprise. In his first year at the school, Robert did not want to give the taller Joyce boy "the impression that I don't like to fight" or "the impression that anyone could just pick on me," so he retaliated by tapping Joyce's shoulder with the back of his hand.
Plaintiff testified he thought his "sideswiping" of Joyce's shoulder "was the end of it." Robert consequently continued on his way down the hall and into the classroom. He was just on the threshold when, without warning, Joyce pushed him from behind, causing plaintiff to fall against a nearby desk and injure his right foot on its metal leg. At this *158 point Miss Rothberg was in the front of the room, either at the blackboard near the doorway or at her desk.
Robert's leg worsened and eventually was amputated three inches below the knee. He now wears an artificial limb.
Apart from what occurred on this Friday afternoon, there was no proof that Joyce was previously physically aggressive or that he bullied other pupils. Miss Rothberg's answers to interrogatories, introduced into evidence by plaintiffs, admitted that Joyce was "a discipline problem," and that, while he had never been sent to the principal, "Because of his unruly conduct on several occasions, he was ordered to the isolation class." The answers do not, however, indicate that Miss Rothberg had any previous actual or constructive notice of Joyce's assaultive propensities, if such existed.
Defendant had been instructed by the principal that her duties included the maintaining of order in the corridor outside the classroom as well as inside the classroom. During the changing of classes, it was a matter for her discretion whether she should be in the corridor or in the classroom. When on corridor duty, the teachers customarily stand in a position where they can see inside the classroom and down the corridor. By the time Robert had reached the doorway, Miss Rothberg's room was a little less than half filled with students of the class about to begin.
The Law Division judge dismissed the complaint for three reasons: (1) defendant's duty to supervise is a public duty and not a duty owed to the plaintiff, and therefore there was no legal obligation for her to intervene and protect Robert from Joyce; (2) the first encounter in the hallway was not of a nature as to attract the attention of the teacher, and she could not as a matter of law be charged with negligence; and (3) plaintiff's injuries were not proximately caused by the defendant's negligence but were attributable to Joyce's intervening act.
On appeal, the defendant does not attempt to support the first reason given by the trial judge as requiring a dismissal. It is conceded that a public school teacher does *159 owe her pupils the duty of supervision, and will be liable for injuries caused by failure to discharge that duty with reasonable care. So much has already been indicated by this court in Hare v. Pennell, 37 N.J. Super. 558, 568 (App. Div. 1955); other authorities are not to the contrary, and we so hold. 78 C.J.S. Schools and School Districts § 238c, p. 1197; 47 Am. Jur., Schools (1959 Cum. Supp.), § 60.1, p. 30; Annotations 160 A.L.R. 7, 147, 155 (1946); 32 A.L.R.2d 1163, 1182-84 (1953). Cf. N.J.S.A. 18:5-50.4; Tripus v. Peterson, 11 N.J. Super. 282 (Cty. Ct. 1950); 2 Restatement, Torts, § 320 (1934).
The basic dispute between the parties concerns whether the trial judge rightly determined that plaintiffs' proofs did not establish a prima facie case of negligence. On this point it is the plaintiffs who concede that no negligence can be charged to Miss Rothberg in respect of Joyce's first attack in the hallway  and this for the reason that Robert's testimony was that neither he nor Miss Rothberg could have anticipated Joyce's first blow. The focus is therefore on whether responsible minds could differ in appraising the reasonableness of defendant's conduct in failing to act to prevent the second attack.
Although there was no proof adduced that Miss Rothberg actually saw the first exchange of blows in the corridor, the court below said "it may be fairly inferred, and for the purpose of this motion should be inferred, that she saw that incident." In this regard, attention should be given to Robert's testimony that defendant was looking in his direction when she was standing in the doorway. For present purposes, we shall assume, without deciding, that it is legitimately inferable from the proofs that defendant did witness the initial occurrence in the hall.
Plaintiffs' contention is that due care required Miss Rothberg to take affirmative action to restrain the Joyce boy from further aggression, or at least to remain at her doorway post so that her mere presence would provide a deterrent effect. The charge is that, knowing Joyce to be a disciplinary *160 problem and to have a tendency toward "unruly conduct," the teacher "should have realized how the incident was going to develop." It is urged that the defendant irresponsibly removed herself from the scene "in the very middle of the attack," leaving childish and inflamed tempers to continue the altercation.
We are constrained to disagree with the plaintiffs' version of the facts. Our judgment is that reasonable men could not conclude that there were circumstances which should have alerted Miss Rothberg to the necessity of exercising any control over Joyce. It is clear that at least several moments elapsed between the exchange of blows in the corridor and the pushing incident at the doorway. The boys separated, Robert and his friends continued to walk the 15 feet to the classroom, and Joyce apparently continued walking in the opposite direction. It was then that Joyce altered his direction and returned to push the plaintiff. Robert admitted that his "tap" was not forceful; he testified that he too was surprised at being pushed from the rear. Miss Rothberg could not, therefore, have foreseen any further conflict. Since the incident had apparently ended, the need for closer supervision over these boys  to the possible detriment of the students already in the classroom  could not reasonably have been apprehended. See Bertola v. Board of Education, 1 A.D.2d 973, 150 N.Y.S.2d 831 (App. Div. 1956).
In sum, the case is absolutely barren of evidence to show that defendant knew or should have known that Joyce was going to push the infant plaintiff. It should be noted that this is not an instance in which the teacher has absented herself from her classroom or from her pupils for an inordinate length of time, Ohman v. Board of Education, 300 N.Y. 306, 90 N.E.2d 474 (Ct. App. 1949), rehearing denied 301 N.Y. 662, 93 N.E.2d 927 (Ct. App. 1949), or for purposes foreign to teaching duties, Guyten v. Rhodes, 65 Ohio App. 163, 29 N.E.2d 444 (Ct. App. 1940). Even in these cases, the teacher's default in supervision was held *161 not to have proximately caused injuries to one student inflicted by another student.
In the present case, it need not be decided whether the jury should have been permitted to pass upon the question of proximate cause. We are convinced of the correctness of the trial judge's view that there was nothing in the first encounter to indicate the need for intervention, and that defendant's conduct in returning to her classroom after the incident had apparently ended was not contrary to that of a reasonably prudent person in the same or similar circumstances.
The judgment is affirmed.