[No. 14024.  *En Banc.*  April 25, 1918.]

# HORATIO BRUENN, *by his Guardian etc., Respondent,* v. NORTH YAKIMA SCHOOL DISTRICT NO. 7, *Appellant.*[1]

TRIAL—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—PLEADING. Contributory negligence need not be submitted to the jury where it was not pleaded as a defense.

EVIDENCE—CONCLUSION OF WITNESS. An offer to show by an experienced teacher that a teeter board was not in itself a dangerous instrumentality is properly excluded as a conclusion of the witness.

APPEAL — REVIEW — HARMLESS ERROR — EXCLUSION OF EVIDENCE. Error cannot be predicated upon excluding testimony tending to show that a teeter board was not in itself a dangerous instrumentality, where the court by its instructions eliminated that question and submitted the case only upon the question of failure or inadequacy of supervision.

SCHOOLS AND SCHOOL DISTRICTS — INJURY TO CHILD ON PLAY GROUNDS—NEGLIGENCE—EVIDENCE—SUFFICIENCY. Recovery against a school district for injuries to a child playing on a teeter board on the school grounds, on the ground of negligence in supervision, is sustained where there was evidence that the teeter board was removed from its original position and dangerously used in a swing, and that the teacher in supervision on the grounds either permitted such removal or failed to observe and prevent it.

STATUTES — CONSTRUCTION — RETROACTIVE EFFECT. Laws 1917, p. 332, § 1, providing that no action shall be "brought or maintained" against a school district for non-contractual acts or omissions of officers or employees relating to play grounds owned or operated by the district does not apply to an action which had gone to judgment against the school district prior to the taking effect of the law in June, 1917, notwithstanding the pendency of an appeal by the defendant at that time; since the prevailing party is not "maintaining" an action by appearing and resisting the appeal.

DAMAGES—EXCESSIVE VERDICT. A verdict for $5,000 for personal injuries sustained by a boy seven or eight years of age, is not excessive where his ankle was injured, he suffered much pain and underwent a number of operations, and his leg was permanently shortened and injured.

[1] Reported in 172 Pac. 569.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered June 3, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a minor while playing on public school playgrounds.   Affirmed.

*Harold B. Gilbert, N. K. Buck,* and *John F. Chester-ley (McAulay & Meigs,* of counsel), for appellant.

*Guy O. Shumate,* for respondent.

MAIN, J.—Action to recover damages for injuries claimed to have been sustained while the minor plaintiff was at play on the public school playground.   Verdict and judgment for plaintiff in the sum of $5,000.

The injury to the minor plaintiff is alleged to have taken place in November, 1914, the minor plaintiff at that time being between seven and eight years of age. It is alleged that, just prior to one o'clock on the day of the injury, some of the small boys had taken a teeter board from its own upright and placed it across a swing, upon which the plaintiff and a number of other small boys seated themselves and began to teeter. Shortly after engaging in this form of play, the school bell rang, when the boys on the opposite side of the teeter suddenly sprang from it, permitting the side on which the minor plaintiff sat to rapidly descend, striking him upon the ankle and causing the injury complained of.   The ground of negligence complained of, and upon which the verdict seems to have rested, was either lack or inadequacy of supervision.   We shall notice the errors in the order in which they have been presented.

First, it is claimed that the court committed error in refusing to instruct the jury upon contributory negligence.   This assignment is based upon the evidence of the boy that, while sitting upon the board, he had

his legs crossed beneath him, it being maintained by
appellant that the crossing of the boy's legs was the
proximate cause of the injury, and that such evidence
was sufficient to take the question of contributory neg-
ligence to the jury. The court below refused to so
charge upon the ground that contributory negligence
was not pleaded. It is true that, in a number of cases,
we have held that, while contributory negligence was
an affirmative defense and to be proved as any other
affirmative defense by the party pleading it, such de-
fense might be established by the testimony of the
plaintiff upon either direct or cross-examination. This,
however, is a rule of proof and not a rule of pleading.
It was not incumbent on the lower court in charging the
jury to submit to them any issue not within the plead-
ing. For this reason, refusal to submit such issue can-
not be held error.

The second error is claimed on the exclusion of testi-
mony. Appellant called a teacher of long experience
in school playgrounds and offered to show that a teeter
board constructed as the one upon this playground was
not in itself a dangerous instrumentality, and that the
school district was in the exercise of reasonable care
in providing apparatus of this character. The offer
was denied. The second part of the offer was clearly
inadmissible, calling for a conclusion to be reached by
the jury and not by any witness. The first part, while
a question of fact, was not material to the issue sub-
mitted to the jury. The instructions are not included
in the record sent up. The lower court, however, in
passing upon appellant's offer, announced that he
would eliminate the question of the original construc-
tion of the teeter board from the jury and submit to
them only the question of failure or inadequacy of su-
pervision. If the court so instructed the jury, and,
since there is no contention to the contrary, we will as-

sume it did, the denial of the offer as not within the issue of negligence to be submitted was not error.

Third, the verdict is said to be contrary to the evidence. The evidence supporting the verdict is very weak. The weight of the testimony, in our judgment, is to the effect that the boy was not injured at the time or place claimed, but was injured during the forenoon recess while playing upon the teeter board when in its regular position. That, however, is not for us to decide. The jury has decided otherwise and the lower court has denied a new trial. We must, therefore, accept the fact as found by the verdict that the injury occurred in the manner and at the place testified to by the boy. This assignment also necessitates a review of the evidence as to the supervision of the playground. The principal and two of the teachers testified to supervision of the playground on all days between 12:40 and 1 o'clock, which would include the time of the injury. No particular remembrance was had of the day of the accident, no complaint having been made at the time it is alleged to have occurred, testimony being to the effect that supervision was had on every day of the school year. The little boy, however, says he saw no teacher on the playground. This is negative testimony and of little value. If, as accepted by the jury, the accident occurred in the manner and at the time testified to by the little boy, and at the time, as contended by appellant, a teacher was present, then the jury might have found that the supervision was inadequate or negligent in permitting the boys to take the teeter board from its own upright and use it in connection with the swing. If the teacher knew it, it was negligence to permit it, and if she did not know it, it was negligence not to have observed it. For these reasons, this claim of error must be rejected.

This opinion, up to this point, was written by the late Judge Morris after the case was heard by the department to which it was first presented. Upon the hearing *En Banc,* the opinion, as above set forth, was adopted by the court.

The principal question presented upon the hearing *En Banc* was the effect which the act of the legislature (chapter 92, page 332, Laws of 1917) in 1917 had upon a judgment which had previously been rendered against a school district. That act consisted of one section, which is as follows:

"Section 1. No action shall be brought or maintained against any school district or its officers for any non-contractual acts or omission of such district, its agents, officers or employees, relating to any park, playground, or field house, athletic apparatus or appliance, or manual training equipment, whether situated in or about any school house or elsewhere, owned, operated or maintained by such school district."

The act was approved by the governor on March 12, 1917, and took effect during the month of June following. The judgment in this case was rendered on the 19th day of June, 1916, approximately one year prior to the time when the act became effective. There are three possible classes of actions to which the statute might apply: First, cases which had arisen but upon which no action had been instituted, or causes that might arise in the future; second, actions which had been instituted but had not gone to final judgment when the statute took effect; and third, actions in which a final judgment had been entered when the act became effective.

It is the contention of the appellant that the act applies to all three classes of actions. It is the contention of the respondent that the act does not apply to those actions in which a judgment had been previously

entered. The act provides that no action shall be
"brought or maintained." By the use of the two
words brought or maintained it was evidently the legis-
lative intent that they should not be given a synony-
mous or equivalent meaning. Had the word "brought"
not appeared in the statute, it may be that the word
"maintained" could then be given the meaning as only
preventing the institution of actions, and as not apply-
ing to those which had been previously begun. This
was the view entertained by the supreme court of the
state of Maine in *Burbank v. Inhabitants of Auburn*, 31
Me. 590. The act which the court was considering in
that case contained only the word "maintain," and it
was held not to apply to actions which had been previ-
ously brought. The doctrine of that case, however,
cannot be applied to the statute now before us. It is
the duty of the court to ascertain, so far as it can, the
meaning which the legislature intended to convey and
give it effect. The word "brought" obviously applies
to all actions which had not been instituted prior to the
time the act took effect, whether the cause of action had
arisen at that time or not. The question then arises
whether the word "maintained" applies both to causes
of action which had been previously instituted but
which had not gone to judgment, and to actions in
which a final judgment had been entered at the time
the act took effect. Retroactive statutes are generally
regarded with disfavor, and where it does not clearly
appear that such was the legislative intent, the court
will not give the statute a retroactive effect where to
do so would impair existing rights. *Moore v. Brown-
field*, 7 Wash. 23, 34 Pac. 199; *In re Heilbron's Estate*,
14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602.

In the case last cited it was said:

"To construe the statute therefore as retroactive
would require us to hold that it impaired existing

rights and we ought not to incline to such a construction where it does not clearly appear that such was the legislative intention. Retroactive statutes are generally regarded with disfavor and we think that the act under consideration must be construed as prospective only.

"In Sutherland on Statutory Construction, § 464, the learned author says:

" 'A statute should not receive such construction as to make it impair existing rights, create new obligations, impose new duties in respect of past transactions, unless such plainly appear to be the intention of the legislature. In the absence of such plain expression of design, it should be construed as prospective only, although *its words are broad enough in their literal extent to comprehend existing cases.*' "

At the time the above-mentioned act was passed, the respondent had an existing right in the judgment which had previously been obtained against the school district. As already pointed out, there is a class of actions to which the act could apply other than those in which a final judgment had been entered. There being a field in which the statute may operate without applying it to actions in which a judgment had already been entered, we think it was not the legislative intention that it should apply to the latter class of actions and thus destroy existing rights arising out of a final judgment.

But it is argued that, since the action was pending on appeal subsequent to the time when the statute took effect, the word "maintained" is applicable. This contention does not seem to us sound. When a person obtains a final judgment in the superior court, he has nothing further to do. He has obtained his judgment and is out of court. True, when the appeal is taken, notice must be given him, but this notice is not process and he is not required to appear in the appellate court. If he does not, no default can be taken against

him.  It is the common practice for respondents to
appear in this court and present their causes, and,
from the court's standpoint, it is quite desirable that
they should do so.  But if they do not, no default is
entered and the cause is considered upon its merits.
In the case of *North Star Trading Co. v. Alaska-Yu-
kon-Pacific Exposition,* 68 Wash. 457, 123 Pac. 605, the
court had under consideration a statute which provided
that no corporation should be permitted to ''commence
or maintain'' an action without first alleging and prov-
ing that it had paid its annual license fee last due.  It
was there held that a corporation, even though it had
not complied with the statute as to the payment of its
license fee, could defend an action brought against it,
and in so doing was not maintaining an action within
the meaning of the statute.  If to defend an action in
the superior court, where, if no appearance has been
made, a default may be taken, is not maintaining an
action within the meaning of the statute, it would seem
reasonably to follow that respondent, in this court, by
appearing and resisting assignments of error, is not
maintaining an action.  The cause now before us was
tried to a jury, and consequently is not tried here *de
novo*.  The appellant, by its assignments of error,
claims that the trial court has committed errors of law.
The respondent's position is that no errors were com-
mitted.  The appellant has the affirmative of the argu-
ment, and the respondent the negative.

In *Glasser v. Hackett,* 37 Fla. 358, 20 South. 532, it
was held that a writ of error, which corresponds to an
appeal in this state, is in the nature of a new suit.  In
*Miller v. Union Mill Co.,* 45 Wash. 199, 88 Pac. 130,
the court had under consideration the effect of the act
of 1905 which repealed the factory act of 1903 upon
causes of action which had arisen under the law of
1903 prior to its repeal.  The law of 1903 required em-

ployers to safeguard dangerous machinery and deprived such employers of the defense of assumption of risk.   It was there held that the repealing act did not operate retroactively, or affect causes of action that arose under the law of 1903 prior to its repeal.   The case of *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061; *Id.,* 228 U. S. 148, is distinguishable in two respects: First, in that case the action had not gone to judgment when the repealing act became effective; and second, the later act there was an act which repealed the prior act under which the action was being maintained.   In the present case, as already pointed out, the action had gone to judgment long before the act took effect.   In addition to this, the statute makes no reference to any previous statute, and it operates as a repealing act by implication only.   As held in *Redfield v. School District No. 3,* 48 Wash. 85, 92 Pac. 770, and *Howard v. Tacoma School District No.* 10, 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D 792, a right of action existed against the school districts by virtue of §§ 950 and 951 of Rem. & Bal. Code.   That statute is only repealed by the act of 1917 to the extent to which the two acts are necessarily inconsistent.   Had the latter act expressly repealed the former, it may be that, under the doctrine of the *Ettor* case, *supra,* the action would be terminated at whatever point it was, even though pending on appeal.   The case of *Haynes v. Seattle,* 87 Wash. 375, 151 Pac. 789, is distinguishable in this: There the statute applied to "pending" actions and was held to be applicable to an action pending on appeal.   As already pointed out, while the present case was pending on appeal, the respondent, within the meaning of the statute, was not maintaining an action here.   The case of *Spear v. Bremerton,* 95 Wash. 264, 163 Pac. 741, is, we think, not applicable to the present situation.

One other question remains, and that is whether the damages are excessive. The jury awarded a verdict of $5,000, and after motion for new trial was overruled, judgment was entered for this sum. If the boy's present condition was proximately caused by negligence attributable to the appellant, as the jury had a right to find, then the verdict was not in such amount as to indicate passion or prejudice. The boy suffered much pain, underwent a number of operations, and was permanently injured. The leg that was injured will be shorter than the other and, the probabilities are, will not grow in proportion to the rest of the body.

The judgment will be affirmed.

ELLIS, C. J., PARKER, HOLCOMB, CHADWICK, and WEBSTER, JJ., concur.