LORRAINE H. BRITTAN, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29041.)

Court of Claims, March 29, 1951.

*Willis S. Morgan* and *Edward J. Burns, Jr.,* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*David Marcus* and *Lawrence H. Wagner* of counsel), for defendant.

GORMAN, J. The present claim arises out of an accident which occurred on April 5, 1946, at Cortland State Teachers College while claimant was undergoing a series of physical fitness tests to determine her eligibility for admission as a student to the college.

Cortland State Teachers College is a college owned and operated by the State of New York to prepare and train students as elementary school teachers and as physical education instructors in elementary and secondary schools.

Claimant, an eighteen-year-old high school senior at Van Etten High School, Van Etten, New York, sought admission to the college as a student in the physical education program. As a prerequisite for admission, certain mental and physical tests were administered to the applicants. These tests included physical fitness index tests, known as P.F.I. tests, designed to measure the fitness of the body as a whole through a test of physical strength. The battery of strength tests consisted of seven tests, the first five of which, namely, the height and weight, lung capacity, grip test, back lift and leg lift, were taken in the foyer, and the last two, push ups and pull ups, were taken in the gymnasium itself.

Professor T. Fred Holloway, a physical education instructor at the college, was in charge of the administration of these tests. At the time of the claimant's accident, he was not present in the foyer. Each test was administered by one senior student, while another recorded the results. While performing the fifth test in this series, the leg lift test, claimant received a serious injury to her left knee.

To perform this test the person to be tested is required to mount a wooden platform and to stand with feet in a prescribed position on either side of a dial or gauge. A bar is placed in

the subject's hands, and a belt, one end of which is looped around one end of the bar, is passed around the lower portion of the hips and the free end is looped around the other end of the bar and tucked in under so that it rests next to the body. If properly applied, the pressure of the belt against the body and the resultant friction of the free end against the standing part holds the bar securely. The subject is then directed to bend his knees to approximately a 120 degree angle and a chain is hooked from the dial to the bar. The chain should be so adjusted that the knees will not be completely straightened out at the conclusion of the test. The subject is then directed to keep his head erect, his back straight and to lift, using his legs rather than his arms or back as a motivating power. As long as the dial continues to rise, the subject should be encouraged to continue lifting, but not beyond his natural limits. As soon as the dial stops, the subject's effort should be immediately halted.

The leg lift test was administered to claimant by one Charles Patrick, a senior physical education student at Cortland State Teachers College. This was his first assignment in an official capacity. Patrick had, the previous semester, completed a course in tests and measurements during which students were instructed in the administration of this test. It also appears that several days before these tests, Patrick and the other student assistants had been given general group instruction in the administration of the various components of the physical fitness index tests.

The record is not clear as to the instructions given to claimant by Patrick as she prepared to undergo the leg lift test, but it appears that they were not too comprehensive, and the terminology used by him in his testimony regarding the instructions he gave did not accord closely with that used by the experts. Claimant testified that she began lifting and had about reached her maximum, but Patrick encouraged her to continue and she therefore kept pulling. She then started to weave a little bit, and there was a sudden snap, followed by a sharp pain in her left knee causing her to stagger and fall forward in a faint. Claimant was unable to determine what snapped, whether it was part of the equipment or something else. She further testified that previous to the snap there seemed to be an uneven strain on the bar, that it quivered more or less, and that the left side of the bar went down and the right side went up. She was not conscious of any slipping of the belt. She testified that just before the accident her legs were pretty straight and were not

at an angle. At the time of the accident, the dial registered 1,250 pounds which is undeniably in the upper brackets for a girl of claimant's age, height and weight (eighteen years, five feet four inches in height and 128 pounds in weight).

Patrick stated that he was watching the dial, that it continued to rise and the first indication he had of anything wrong was when claimant's knee seemed to give way and the dial stopped at approximately the same instant. He testified that the belt did not seem to him to have slipped, but that when the claimant straightened up it was loose. The battery of strength tests herein described has been advantageously used in many colleges and secondary schools throughout the United States. Testimony of witnesses for both the claimant and the State indicates that the tests are not dangerous if properly administered. Strain and injury may result if the proper procedure is not followed. As stated in Claimant's Exhibit 27, " Maximum lifts occur when subjects' legs are *nearly straight* at the end of the lifting effort. However, it is highly improper to adjust the length of the chain so that legs straighten completely, as this throws all the pressure of 1000–2000 pounds on knee-joint cartilages." Patrick testified that he had never been taught that there was a possibility of injury to the cartilages and ligaments of the knees from the leg lift test.

It is widely conceded that experience is necessary to render one an adequate tester, at least from the standpoint of securing accurate statistical results from the various components of the strength test. Admittedly, the leg lift and the back lift tests are the most difficult to administer. The same lack of experience which may result in erroneous scoring of the tests may also result in injury to the subject in the administration of the test. We believe that if the leg lift test had been administered to claimant by or under the direct supervision of a qualified and experienced tester the accident would not have occurred. An experienced tester would have known the proper mechanical procedure and would have made certain that it was followed. In addition, he would at all times have been acutely conscious of the preparation, conduct and actions of the subject in submitting to the test to see that nothing occurred which would injure her. It was important that the subject not be urged beyond her natural limits, and a competent tester would be ever on the alert for evidences of strain, swaying, and overexertion.

The State of New York, through its agents, the staff of Cortland State Teachers College, owed to the claimant the duty of

reasonable care in the conduct of the tests to which she was required to submit in order for her application for admission to the college to be considered. That duty embraced the proper administration and supervision of these tests. An adequate degree of supervision is provided by furnishing an experienced and competent man. (*Curcio* v. *City of New York,* 275 N. Y. 20.) The New York State Board of Regents requires that in order to teach physical education a teacher '' must have completed a four-year approved high school course followed by four years of academic and professional training leading to a degree or its equivalent as approved by the Commissioner of Education.'' A similar standard of care, competence and supervision should be required in the administration of the physical fitness index tests. There is no persuasive proof that Patrick had himself received sufficient instructions in the administration of the leg lift test, that he was aware that the test could be dangerous, or that he had sufficient experience to anticipate or recognize any evidence of strain, overexertion or erroneous technique on the part of the person to be tested. It is extremely doubtful that the claimant received proper instructions from Patrick on how to take the test. She was not instructed to do any warm-up exercises prior to taking the test, a procedure recommended by the experts.

Allowing a physical education class to be conducted by a student physical education instructor in the absence of a qualified instructor has been held to constitute negligence. (*Gardner* v. *State of New York,* 256 App. Div. 385, affd. 281 N. Y. 212.) In order to establish negligence, plaintiff is not required to exclude or eliminate every other possible cause. (*Rosenberg* v. *Schwartz,* 260 N. Y. 162) or point out the particular act or omission which caused the injury. (*White* v. *Lehigh Vall. R. R. Co.,* 220 N. Y. 131; *Trimble* v. *City of New York,* 275 App. Div. 169; *Kniffley* v. *Reid,* 287 Ky. 212.) Under all the circumstances disclosed by the record, we conclude that the mishap was within the reasonable apprehension of the State and that the State was negligent.

Claimant at the time of the accident was an extremely healthy and athletic girl. She had been outstanding in sports throughout her school career and had received an offer to play professional baseball with the Girls All American Baseball League which she was considering at the time of her accident. She also had an ambition to become a physical education teacher and it was in pursuing this end that her accident occurred.

As a result of the accident, claimant sustained a torn anterior cruciate ligament of the left knee which condition is permanent. Claimant thus has an unstable knee which is described by one medical expert as a dislocation of the knee joint and by another as a posterior sublaxation rather than a dislocation of the knee. Claimant suffered much pain at the time of her accident and at subsequent times when her knee has given out. She lost a month from school at the time of her accident, and has subsequently been incapacitated and has lost time from work when her knee has caused her trouble. In September and October of 1946, claimant visited the Robert Packer Hospital at Sayre, Pennsylvania, for examination of her knee and an operation was recommended. Claimant was unable to undergo the operation at that time for financial reasons, but on February 14, 1947, she was operated on at the Robert Packer Hospital, where she remained for ten days. Medical testimony indicates that while for normal pursuits, claimant's knee will give little trouble, she will be unable to engage in any personal contact sports and has been unable to pursue a career as a physical education instructor.

Judgment is accordingly directed in favor of claimant and against the State of New York, in the amount of $7,500. The foregoing constitutes the written and signed decision upon which judgment may be entered.