Frank D. Paulo, J.
The plaintiff Michael S. Diamond brings the within action against the Board of Education of the City of New York and William Jansen, as superintendent of schools of the City of New York, individually, for injuries suffered by him while acting as a teacher at McKee Vocational High School in the borough of Richmond.
The action was tried before the court and jury and a verdict in the sum of $4,500 in favor of the plaintiff and against the defendant board of education was returned by the jury. The *48 complaint against Dr. Jansen was dismissed by the court during the trial.
The court reserved decision on motions made by the board of education at the end of the plaintiff’s prima facie case and at the end of the entire case. Decision was also reserved on motions made by the defendant to set aside the verdict of the jury and for judgment notwithstanding the verdict.
The plaintiff has alleged several acts of negligence in his complaint, many of which find no support in the record. It can be fairly stated that the essence of the plaintiff’s claim is that the board of education with full notice of all the facts failed in its duty to properly and adequately supervise the conduct of the students using the cafeteria at McKee Vocational High School on the day of the accident.
The plaintiff has offered proof that on the 15th day of December, 1955, while assigned to the cafeteria in McKee Vocational High School during the sixth period, he was injured as the result of an incident which took place during this period. The plaintiff predicates his claim for liability on the ground that on at least three prior occasions he personally had notified either the principal of the school or the assistant principal that additional personnel was required in order to properly supervise the cafeteria. The plaintiff has also offered the testimony of Jacob Homer, the teacher in charge of the lunchroom during the period in question, in which Mr. Homer testified that he, too, on occasion, had pointed out the need of additional help in the cafeteria, but at no time had there been assigned more than four teachers to supervise the students.
While the plaintiff has claimed in his complaint that the cafeteria was congested and overcrowded, all of the proof offered by the plaintiff clearly indicates that, although the capacity of the cafeteria was 450, that facilities had been set up for handling 300 students. There is no proof to indicate that any more than 300 students were present in the cafeteria during the period when the accident occurred.
On the day in question there had been two prior altercations between students who had been successfully separated by the teachers in charge without incident. A third fight broke out between two students, and some of the other students started moving in the direction where the fight was taking place. The plaintiff, who was stationed near the entrance to the cafeteria, raised his hands in order to direct the students back to their places, when he was pushed by a student, who in turn was being pushed by other students following. As a' result of being pushed by this student, the plaintiff was caused to strike *49 his head against a metal cabinet, thereby suffering certain injury to the head which required three sutures to close.
The plaintiff lost certain time from his employment as a teacher and was unable to carry on his architectural practice because of the injury suffered by him. No proof was offered that any permanency was involved in the injury suffered by the plaintiff.
On the proof offered by the plaintiff, we must inquire as to whether a cause of action has been made out against the Board of Education of the City of New York.
The board of education is in the same position as any other defendant being sued for its negligent acts of commission or omission and is only held to a standard of reasonable care. The board of education is only required to take those steps and adopt those procedures reasonably calculated to protect the safety of its students and its personnel. It is in the light of these principles that we must examine the record to determine what steps, if any, were taken by the board of education with respect to supervision of students using the cafeteria at McKee Vocational High School.
The proof indicates that there were four teachers and student monitors assigned to the lunchroom during this period. One of the teachers was a woman, Mrs. Parent, who handled the clerical and administrative detail connected with the supervision of the students. The other teachers were three males, Mr. Homer, the plaintiff and Mr. Cossey. At the time when the plaintiff was pushed and made to fall against a metal cabinet, Mr. Homer was out of the room and did not return until the incident had occurred. There is proof in the record which indicates that Mr. Cossey was a substitute who also worked as a fireman with the fire department of the City of New York, and apparently possessed the physical qualifications for such a post.
The examination before trial of Moses Sorola, the principal, was read into evidence by the plaintiff. The principal in his testimony pointed out that at the beginning of each school year students were instructed on the standards of behaviour required of them in using the cafeteria. In addition to the instructions given to the students, Mr. Sorola testified that the teachers at the beginning of the year were given written instructions as to the rules and regulations to be employed in governing the conduct of the students using the cafeteria. The proof shows that when the students first went into the cafeteria they were registered and assigned to particular seats; they were limited in their right to move in and out of the lunchroom, and a *50 system of issuing passes to students who wished to leave the room was set up. The students were permitted to talk while they ate their* lunch.
In addition to these precautions, four persons were assigned to supervise 300 stndents using the cafeteria on the 15th day of December, 1955. According to the testimony of Mr. Sorola, teachers assigned to the cafeteria were given certain sectors to patrol.
While the plaintiff has sought to spell out an atmosphere of lawlessness and riot prevailing in the school, the record is devoid of any proof that the incidents testified to by Mr. Diamond and the prior court appearances testified to by Mr. Homer were so connected in time and in sequence as to indicate a continuing series of illegal or disorderly acts that would spell out a pattern of lawlessness in McKee Vocational High School. There is no proof in the record that any “ riots ” had taken place prior to December 15, 1955 so as to put the board of education on notice as to any extraordinary conditions present. (See Ohman v. Board of Educ. of City of N. Y., 300 N. Y. 306, 310.)
Unless we are to impose upon the board of education the burden of liability higher and more extraordinary than that placed upon the usual defendant, we cannot say that on this record there is proof indicating that the board failed to take reasonable measures for the protection of its students and teachers at McKee Vocational High School. The duty to have adequate supervision did not impose upon the board of education the obligation of placing guards and supervisors behind every student.
In Graff v. Board of Educ. of City of N. Y. (258 App. Div. 813, affd. without opinion 283 N. Y. 574) the court in defining the board’s duty of supervision, where a student was involved, clearly indicated that the obligation merely required the board to assign one or more competent instructors.
Keither the research of counsel nor the court’s own research has produced any authority which is directly in point with the problem now before the court for decision. A review, however, of the cases dealing with the duty of the board to provide adequate and proper supervision, where a student has been injured, would indicate that the board met the test of adequacy in the course followed by it with respect to the cafeteria at McKee Vocational High School. (See Fein v. Board of Educ. of City of N. Y., 305 N. Y. 611, 612; Miller v. Board of Educ., Dist. No. 1, of Town of Albion, 291 N. Y. 25, 30, 31; Bertola v. Board of Educ. of City of N. Y., 1 A D 2d 973.)
*51 The motion of the defendant to set the verdict of the plaintiff aside is granted and the verdict is set aside, and the motion of the defendant board of education at the end of the plaintiff’s prima facie case to dismiss the complaint on the ground that plaintiff failed to make out a prima facie case against the board of education is also granted, and the complaint is dismissed.
Ten days’ stay; 60 days to make a case.