**Ronald T. BUTLER, an Infant, by Booker T. Butler, his Father and Next Friend, and Booker T. Butler, Individually, Appellants**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 22221.

United States Court of Appeals District of Columbia Circuit.

Argued April 2, 1969.

Decided June 20, 1969.

Petition for Rehearing Denied Aug. 15, 1969.

Leventhal, Circuit Judge, dissented.

Mr. I. Irwin Bolotin, Washington, D. C., with whom Messrs. Philip J. Lesser and Gerald Herz, Washington, D. C., were on the brief, for appellants.

Mr. David P. Sutton, Asst. Corporation Counsel for the District of Columbia, with whom Mr. Charles T. Duncan, Corporation Counsel, Mr. Hubert B. Pair, Principal Asst. Corporation Counsel, and Mr. Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellee.

3. Abbott v. Coe, 71 App.D.C. 195, 197, 109 F.2d 449, 451 (1939).

Before PRETTYMAN, Senior Circuit Judge, and BURGER and LEVENTHAL, Circuit Judges.

PRETTYMAN, Senior Circuit Judge:

Our appellants were plaintiffs in a civil action in the District Court against the District of Columbia. At the close of their case the trial judge directed a verdict for the defendant-appellee. This verdict was on alternative grounds. Relying on the test established in *Elgin*[1] the judge held that the evidence adduced showed that the alleged negligent act was "a clearly discretionary matter" that had been determined by the school authorities and, therefore, suit against the District of Columbia was barred by governmental immunity. Alternatively the judge held that the plaintiffs failed to present adequate evidence upon which a jury "could reasonably determine that the allocation of the available teachers was a negligent act." We affirm on the latter, alternate ground and do not reach the other contention.

The facts are very simple. On the day of the alleged negligent act, Ronald T. Butler, the minor appellant, was a seventh grade student at the Woodson Junior High School. En route to his printing class, following lunch, he encountered a classmate who warned him that the boys already in the classroom intended to scare him as he entered. He was no more than three steps inside the classroom when an object that "was pointed and * * * sharp and * * * felt like a piece of metal" struck him in the left eye, causing pain and resulting in permanent loss of sight in the eye. It was shown that small metallic type was a part of the equipment used in the classroom, and one witness testified that he noticed a few pieces of such type lying on the floor in the general area where Ronald had fallen.

A teacher from another classroom came into the printing class and, apparently not realizing the seriousness of the injury, nudged Ronald with his foot and told him to get up. Several minutes later (no more than ten and possibly as few as five), Mr. Weir, the printing class teacher, came into the room. Ronald was taken to the nurse's office, his parents were summoned, and in due course he was taken to D. C. General Hospital for treatment.

Dr. John O'Neill, a pediatric ophthalmologist, the only expert witness called by the plaintiffs, testified that, although neither he nor the other doctors who treated Ronald could determine what the object was that had caused the damage, generally speaking the sharper the object the less force was required to cause such an injury.

The plaintiffs' case rested on their contention that the school authorities were negligent in their supervision of this classroom and that this negligence was the proximate cause of Ronald's injury.[2] This argument rested on two bits of evidence: (1) that the printing teacher was not physically present to supervise the students when the class convened and (2) testimony tending to show that both Mr. Weir and the principal had prior knowledge that "horse-

---

1. Elgin v. District of Columbia, 119 U.S. App.D.C. 116, 337 F.2d 152 (1964).

2. Plaintiffs-appellants also make two evidentiary arguments on appeal. The first concerns the trial court's refusal to allow Ronald to give testimony as to what Mr. Weir said or did as he entered the room. On objection from defense counsel the evidence was excluded as irrelevant. The second of these objections relates to the trial court's refusal to allow a fellow student to testify as to student behavior in the classroom on prior occasions when the teacher was absent. This was ex-

cluded when the witness was unable to approximate the dates or times when these prior acts occurred.

As to the latter of these arguments we find no prejudice, since for purposes of the directed verdict the trial judge assumed prior knowledge on the part of the officials-defendants. And as to the first contention we find this ruling to be within the ambit of the trial judge's discretion as to admissibility of evidence. See Post, et al. v. United States, 132 U.S.App.D.C. 189, 193–194, 407 F.2d 319, 323–324 (1968).

play" and throwing occurred in this classroom when the teacher was not present.[3]

The evidence showed that the teacher was not present at the start of this particular class, because he had been assigned to duty as a hall or cafeteria supervisor. Under a plan established by the principal, who was the general supervisor of internal school functions, each teacher had been designated duties during the lunch period. This plan was designed to place teachers in positions where supervision was most needed. There were some twelve hundred students in the school, and, in an effort to provide for maximum safety and order, the teachers were deployed in various places outside their own classrooms during certain periods when the students generally were outside the classrooms. One of these periods was the lunch break.

Plaintiffs offered no evidence that Mr. Weir was not performing his assigned duty on the day in question but, to carry their burden of showing negligence on this point,[4] rely on the fact that the teacher was not present in the classroom. In essence they contend that it was negligent for the school authorities not to have a teacher assigned to a particular classroom containing fourteen pupils while this same teacher, in the exercise of the principal's discretion, was supervising part of an area that may have contained a thousand pupils.

Appellants stress the trial judge's assumption that "there had been complaints of previous horseplay by students in the absence of the classroom teacher."[5] This factor does not support the argument based upon it. It is common knowledge susceptible of judicial notice that small boys may indulge in horseplay—shoot a paperclip, snap a rubberband, or throw a pencil—when a teacher is tardy or turns his or her back.[6] The possibility of such an occurrence had been anticipated by the school authorities here involved. Knowing that if a teacher was assigned cafeteria duty, or that if, in patrol of a corridor not near his own classroom during the lunch break, he might not be physically present in that classroom at the start of the following class period, various rules had been established. The principal had given the students instructions on the first day of school that were designed to govern their conduct in the absence of a teacher. These were buttressed by fourteen specific rules established by Mr. Weir to apply specifically to the conduct of his printing class students. These were printed and distributed to each class member. They directed the students, upon entering the room in the absence of the teacher, to sit down, work on their projects, not throw type, and await further instructions.[7] Thus, faced with the knowledge that children, and especially thirteen-year-old boys, will

3. Now, for the first time, on appeal appellant makes reference to the teacher's failure to lock up these dangerous metallic pieces of type as further evidence of negligence. This theory, or the alternative theory that the students should not have been allowed in the room in the absence of their teacher were not raised at trial. No evidence appears on any theory except the teacher's failure to be present when class convened.

4. The plaintiffs did not call Mr. Weir. No explanation for this is present in the papers before us. Nor was any attempt made to show that Mr. Weir was unnecessarily late for his class.

5. This assumption was based on testimony by Ronald's father, who, along with his wife, visited the principal of the school on the day following the injury to their son. The elder Butler testified that the principal told them that he had had complaints of students throwing type while Mr. Weir was not present in the room. This was denied by the principal at trial.

6. Ohman v. Board of Education, 300 N.Y. 306, 90 N.E.2d 474 (1949), rehearing denied, 301 N.Y. 662, 93 N.E.2d 927 (1950); Lawes v. Board of Education of City of New York, 16 N.Y.2d 302, 266 N.Y.S.2d 364, 213 N.E.2d 667 (1965); Carrol v. Fitzsimmons, 153 Colo. 1, 384 P.2d 81 (1963); cf. Annot., 86 A.L.R. 2d 489, 565 (1962).

7. Diamond v. Board of Education of City of New York, 12 Misc.2d 47, 171 N.Y.S. 2d 703 (1958).

throw at, kick, hit or push a fellow pupil if a teacher is not immediately present, and using the available supervisory personnel, the authorities balanced the need for a teacher to supervise several hundred students milling about the corridors and the cafeteria against the need to supervise fourteen students in a certain classroom for a short period of time.

 The problem is not unlike that relating to other governmental operations involving the safety or well-being of numbers of people; such are streets, sidewalks, sewers, snow removal, playgrounds, and many others. The problem of negligence under such conditions is discussed at some length in *Booth*,[8] *Urow*,[9] *Elgin*,[10] and similar cases.[11] We need not repeat. In the case now before us the plaintiffs do not say there was no plan, or that the plan was defective, or that the plan was not being followed. They say simply that the teacher was absent from the classroom at the critical moment in this affair, and they say that was negligence. Liability for negligence is not established by such allegations or evidence.

Affirmed.

LEVENTHAL, Circuit Judge (dissenting):

In my opinion the ruling of the court reflects a narrow view of scope of liability of the District of Columbia in tort that is contrary to sound doctrine, and is an unwarranted shrinking from the liberating approach set forth in Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 337 F.2d 152 (1964).

The majority opinion, which assertedly rests not on governmental immunity, but on the ground that there was no evidence of negligence, concludes that the problem is essentially that of "governmental operations involving the safety or well-being of numbers of people" and refers to a number of pre-*Elgin* rulings.

Plaintiff's case, as I see it once the immunity question is ignored, may stand firmly on the point that if this were an action against a private school his evidence suffices to go to the jury. Taking it, as we must, most favorably to plaintiff, it showed that he was in a vocational instruction room where he was required to be, his teacher was not present at the start of the class, and he was struck by a piece of movable type thrown by another boy. The teacher and school were on notice that in their rough-housing the boys do throw type and had done so in the past. One student testified when Mr. Weir arrived after Ronald's injury he tried to find out if anybody was throwing type. Indeed the principal's own testimony reflected this notice, by reference to the regulation that instructed the boys not to throw type. It is a jury question whether this kind of formal instruction is enough to show due care and negative liability.

It seems to me the absence of teacher at the start of class, with a room involving this hazard, made a prima facie case, subject to explanation by the principal or other officer of the school that its agent was unavailable at that time due to overriding school needs.

The majority opinion says the teacher was absent because he had been assigned to hall duty or cafeteria duty. This was a permissible but not a necessary inference. The school did not meet the burden of showing where its agent was. The principal, on questioning by counsel for the District, was unable to say what duty he had assigned in the preceding period to the teacher.

One student testified the teacher had hall duty that day. On that premise

8. Booth v. District of Columbia, 100 U.S. App.D.C. 32, 241 F.2d 437 (1956).

9. Urow v. District of Columbia, 114 U.S. App.D.C. 350, 316 F.2d 351 (1963).

10. *Supra* note 1.

11. Amelchanko v. Borough of Freehold, 42 N.J. 541, 201 A.2d 726 (1964); Huff v. Northampton County Board of Education, 259 N.C. 75, 130 S.E.2d 26 (1963).

there is evidence that would uphold a finding of negligence in the teacher's failure to fulfill this duty on the day of the injury. The principal testified that the school wanted each teacher in close touch with his room, and hence he was required to be in his class, or if on hall duty, to be "by his class, or on duty outside of his class by the time the class arrived."

Furthermore, even if the school had showed the teacher was on cafeteria duty, that factor, though certainly relevant as to liability, would not in my view suffice to take the case from the jury. For the question would remain why the teacher was not on time at the start of the class, following the lunch period. There was evidence that he arrived 10 minutes after Ronald was hit, and hence 12 minutes after the class began. If there was a good reason in school business, involving an exercise of discretion by policy officials, why the teacher was elsewhere, it was the school's burden to show where its agent was and what he had been doing.

Finally, even if the teacher was assigned to a duty that would require him to be late for his shop class, I must say that I do not see why such a confession-and-avoidance would take away from the jury the possibility of finding negligence in the absence of an explanation why attractive printing type could not have been closed up in some way. This was not an ordinary classroom, but a shop of sorts with mobile paraphernalia and attractive and throwable material. Taking into account the notice that the obviously dangerous type throwing had occurred before, a juror, exercising his common sense experience with school situations and limitations, could find that a reasonably prudent teacher or administrator would lock up the type, the classroom, or a least provide substitute supervision such as an upperclass student, to lessen the degree of a known danger when the teacher was unable to be present.

Though the decision is cast in terms of insufficiency of evidence of negli-

gence, I feel that it essentially reflects a special protection accorded the defendant because it is a government agency whose employees were on public business. I respectfully dissent from the opinion of the court.