John Forrest CONNETT, a minor, by and through his guardian, Wilbur G. Connett, and Wilbur G. Connett and Peggy Ann Connett, Individually, Appellants (Plaintiffs below),

v.

FREMONT COUNTY SCHOOL DISTRICT NO. 6, FREMONT COUNTY, Wyoming, Appellee (Defendant below).

No. 4892.

Supreme Court of Wyoming.

July 11, 1978.

H. Rick Hollon, of Hamilton & Hursh, P. C., Riverton, for appellants.

Daniel P. Svilar, of Boyer & Svilar, Lander, and Bard Ferrall, Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

## NATURE OF THE ACTION

John Forrest Connett, a minor, through his Guardian, Wilbur G. Connett, and Wilbur G. Connett and Peggy Ann Connett, his parents, individually, bring this action in tort against Fremont County School District No. 6, Fremont County, Wyoming. The plaintiffs charge that Mr. Blankenship, an instructor-employee of the defendant, was negligent in failing to adequately instruct and supervise John Forrest Connett concerning the proper use of chemicals in the school laboratory, in consequence of which he suffered injury.

The defendant filed a motion for summary judgment, which was granted by the district court. We will reverse.

## FACTS

This action comes on because of an alcohol-can explosion which injured, through burning, John Forrest Connett, 14 years of age. The mishap occurred on January 22, 1975, in a study-hall class chemical laboratory at the Wind River Middle School, School District No. 6, at Pavillion, in Fremont County, Wyoming. There were four other students in the class, all of whom were under the supervision of Mr. Blankenship. When the incident took place, three of the students and Blankenship were in a room adjoining the laboratory where they were engaged in a clean-up project, while one other student was in the laboratory with Connett. When the class started, Connett was working with "geo-blocks" and Mike Degner, the other boy in the laboratory, was working on a chemistry project. Degner's experiment had to do with determining the boiling point of solutions of sugar and water and salt and water by heating with alcohol burners. Geo-blocks are oddly shaped pieces of wood varying in size and shape which are placed together by students who undertake to see how high they can be stacked. After working with the geo-blocks for an undetermined length of time, Connett joined Degner at the latter's table where the chemistry exercise was under way.

Connett discussed Degner's experiment with him and then decided that he would undertake to determine if the boiling point of the mixtures would change when alcohol was added to them. Degner asked Connett not to do this because he did not want his experiment disturbed. Nevertheless, Connett obtained an alcohol can which had been left in a nearby sink by Blankenship and which he had used before class to fill the burners that Degner needed for his study-hall project. After filling the alcohol burners, Mr. Blankenship left the can in the sink about four feet from the experiment table. He testified that it must have been his intention to again use the alcohol during the upcoming class period. Connett had not asked for nor been given permission either to use the alcohol or to interfere with Degner's experiment. Even so, he poured the alcohol into one of the beakers of solution without mishap, and then, as he was pouring the alcohol into the other, fire broke out and the vessel containing the alcohol exploded. Upon hearing the explosion, Blankenship ran from the adjoining room into the laboratory where he used a blanket to put out the fire which had engulfed the boy in flame.

## ISSUE ON APPEAL

The issue assigned to our consideration for appellate purpose is:

> Whether the court erred in granting summary judgment and thereby holding that there was no issue of material fact on the question of the instructor's alleged negligence in failing to properly instruct and supervise[1] John Forrest Connett in his use of the alcohol and burner in the school laboratory at the time and place with which we are here concerned.

*The summary-judgment issue:*[2]

We have recently said of summary judgments in *Timmons v. Reed*, Wyo., 569 P.2d 112, 115–116:

> "Upon reviewing the record on appeal from the granting of a summary judgment,
>
> " '. . . we have exactly the same duty as the trial judge and, assuming the record is complete, we have exactly the same material and information in front of us as he did . . . .' *Seay v. Vialpando and Anderson*, Wyo., 567 P.2d 285, 287; *Hunter v. Farmers Insurance Group*, Wyo., 554 P.2d 1239, 1244, and *Knudson v. Hilzer*, Wyo., 551 P.2d 680, 685.

---

1. We understand the appellants' use of the term "supervise" to be generic and to mean the general conduct of the teacher or other school personnel and thus it includes negligent acts inflicting or resulting in injury.

2. The motion for summary judgment was made under various applicable subdivisions of Rule 56, W.R.C.P.

We inquire from the viewpoint most favorable to the party opposing the motion. *Seay v. Vialpando,* supra; *Tri-State Oil Tool Industries, Inc. v. EMC Energies,* Wyo., 561 P.2d 714, 717; *Shrum v. Zeltwanger,* Wyo., 559 P.2d 1384, 1387; *Bluejacket v. Carney,* Wyo., 550 P.2d 494, 497. The moving party in a summary judgment proceeding has the burden of showing the absence of a genuine issue of material fact. *Mealey v. City of Laramie,* Wyo., 472 P.2d 787, 792; *Kover v. Hufsmith,* Wyo., 496 P.2d 908, 910, and *Gilliland v. Steinhoefel,* Wyo., 521 P.2d 1350, 1352. When there are genuine issues of material fact, the summary judgment should not be granted. *Knudson v. Hilzer,* supra, and *Johnson v. Soulis,* Wyo., 542 P.2d 867, 871–872. This is particularly true in negligence cases, where the question of negligence is usually one of fact for the jury to determine, if the evidence respecting such negligence is in conflict. Summary judgments are not commonly interposed and even less frequently granted in negligence actions— because issues of negligence do not often lend themselves to summary adjudication. *Gilliland v. Steinhoefel,* supra, and *Forbes Company v. MacNeel,* Wyo., 382 P.2d 56, 57. . . .'' [Footnote omitted]

■ We have a further summary-judgment consideration not heretofore contemplated by the decisions of this court, namely, that this is a comparative-negligence case, as provided for in § 1–1–109, W.S. 1977.[3] The comparison of causal negligence

under such a statute, is peculiarly a jury function, and only in rare cases is it permissible for a court to hold that a plaintiff's conduct reflects at least 50 percent of the negligence. *Cirillo v. City of Milwaukee,* 34 Wis.2d 705, 150 N.W.2d 460, 465. The Wisconsin Supreme Court, in reversing the grant of a summary judgment under circumstances akin to those herein, stated:

"Summary judgment is a poor device for deciding questions of comparative negligence. What is contemplated by our comparative negligence statute, sec. 895.045, is that the totality of the causal negligence present in the case will be examined to determine the contribution each party has made to that whole. It is the 'respective contributions to the result' which determine who is most negligent, and by how much. A comparison, of course, assumes the things to be compared are known, and can be placed on the scales. . . ." [Footnote omitted] 150 N.W.2d, at 466.

See, generally, Heft and Heft, Comparative Negligence Manual, § 5.130 (1971). This is not to say, of course, that a court may never summarily make the apportionment necessary in a comparative-negligence situation.

In order to determine whether there is, for summary-judgment purposes, an issue of material fact presented by the record on appeal, we must seek our answer within the confines of the above-cited rules. In pursuit of this inquiry, we will examine the

3. Section 1–1–109, W.S.1977, provides:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

"(i) If a jury trial, direct the jury to find separate special verdicts;

"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

It is noted that this statute was adopted, verbatim, from Wisconsin's comparative-negligence statute—as contained in Section 895.045, Wisconsin Statutes. *Woodward v. Haney,* Wyo., 564 P.2d 844; and *Johnson v. Safeway Stores, Inc.,* Wyo., 568 P.2d 908.

*material facts*[4] most favorable to the appellants.[5]

## SUPERVISION (INCLUDING INSTRUCTION)

The evidence concerning the issue of instruction, viewed most favorably from appellants' point of view, may be summarized as follows:

Connett could not recall Blankenship giving him any instructions at any time relative to the use of alcohol around fire, and neither could Blankenship. There is no evidence of instruction on the explosive propensity of the can itself, attendant upon the pouring of the fluid from the vessel in close proximity to a flame. Tim Ditton, one of the students in the class, recalled that Blankenship gave a safety lecture at the first of the school year having reference to the inflammatory effects of alcohol, but the record reveals that Connett was not a member of the class at the commencement of the year. According to Ditton's memory, Blankenship had given no safety instructions on the day in question, and this was consistent with the testimony of Connett and Blankenship.

When the period started, Connett was going to work with geo-blocks and Degner was to do the experiments to determine the boiling points of solutions. Blankenship was in charge of this class and knew the boys of this age required maximum supervision. Blankenship was in the room adjoining the laboratory from the beginning of the period until the explosion occurred, although he may have been in the laboratory once where Connett and Degner were working. According to Ditton, Mr. Blankenship was—at the moment of the explosion—standing in the adjoining room where he could not have viewed Degner's work-table area. Once in awhile Ditton went to the doorway between the rooms to see what Degner was doing, but he was back in the clean-up room most of the time. Blankenship admits that no matter what his surveillance actually was—he never did see Connett at Degner's table and he did not hear a conversation between Connett and Degner which took place at Degner's table, even though Ditton, who was working close to Blankenship in the next room, did hear it. The record reveals that Blankenship had some hearing difficulties. Blankenship was in the storage room with the other boys for 20 to 30 minutes and there is testimony that neither he nor anyone else undertook to supervise Degner's experiment.

The instructor, Blankenship, testified that he was working in a position in the adjoining room which permitted him to see Degner and he had him under constant watch. This testimony conflicts with his admission that he never saw Connett at the Degner work-table—the place where Connett was injured. This testimony is also in conflict with the Ditton testimony about

---

4. We said in *Johnson v. Soulis*, Wyo., 542 P.2d 867, 871:

 ". . . The formal (summary) judgment should be granted only where it is clear that no issue of material fact is involved, and where inquiry into the facts is not desirable to clarify the application of the law. *Forbes Co., Inc. v. MacNeel*, Wyo., 382 P.2d 56 (1963). Where there are genuine issues of material fact the summary judgment should not be granted. *Gilliland v. Steinhoefel*, Wyo., 521 P.2d 1350 (1974); *Kover v. Hufsmith*, Wyo., 496 P.2d 908 (1972); *McClure v. Watson*, Wyo., 490 P.2d 1059 (1971); *Low v. Sanger*, Wyo., 478 P.2d 60 (1970); *Godard v. Ridgway*, Wyo., 445 P.2d 757 (1968). On the other hand, the whole purpose of the procedural technique of a summary judgment would be defeated if cases could be forced to trial by the mere assertion that a genuine issue of material fact exists. *Maxted v. Pacific Car & Foundry Company*, Wyo., 527 P.2d 832 (1974); *LeGrande v. Misner*, Wyo., 490 P.2d 1252 (1971); *McCamon v. Darnall Realty*, Wyo., 444 P.2d 623 (1968); *In Re Wilson's Estate*, Wyo., 399 P.2d 1008 (1965). It is the duty of the trial judge to ascertain what material facts exist without substantial controversy. *Clouser v. Spaniol Ford, Inc.*, Wyo., 522 P.2d 1360 (1974). The propriety of granting a summary judgment depends then upon the correctness of the court's dual findings that there was no genuine issue as to any material fact and that the prevailing party was entitled to judgment as a matter of law. *Dixon v. Credit Bureau of Douglas*, Wyo., 419 P.2d 707 (1966)." [Parenthetical matter supplied]

5. *Seay v. Vialpando*, Wyo., 567 P.2d 285, 287; *Tri-State Oil Tool Industries, Inc. v. EMC Energies, Inc.*, Wyo., 561 P.2d 714, 717; *Shrum v. Zeltwanger*, Wyo., 559 P.2d 1384, 1387; and *Bluejacket v. Carney*, Wyo., 550 P.2d 494, 497.

where Blankenship was generally positioned in the adjoining room and where he was when the explosion happened. These inconsistencies being present, and since appellants have a right to our consideration of facts most favorable to them, there is, thereby, structured an issue of material fact upon the charge of Blankenship's inadequate supervision.

### Duty of care owing the student by the defendant school: [6]

Blankenship recognized that boys of this age in circumstances such as this require

"full supervision, to the best of your ability."

He is correct because included in the duty of care which the school board owes the child is the duty to supervise. It is said in 38 A.L.R.3d, Public Schools—Torts—Super-

vision, II. General principles, [a] Generally, at p. 842:

"A school agency has a duty to supervise the conduct of children on school premises at all times and to enforce pertinent rules or regulations, and a failure to do so can constitute actionable negligence. . . ." [7]

The cases discussing the duty of the school where lack or insufficiency of supervision is charged have expressed the duty owed to the pupil as reasonable [8]—prudent [9]—as ordinary care [10], and as that care which a person of ordinary prudence, charged with the duties involved, would exercise under the same circumstances. [11] That which constitutes proper supervision depends upon the facts and circumstances attending each event. [12] In order that the tort be actionable, the lack of supervision must

**6.** We agree with the district judge's delineation of the duty of care owed by the District and its agents to the pupils. The judge put it this way:

". . . He [Mr. Blankenship], as agent for the defendant school district, was charged with the duty to maintain that degree of care which a person of ordinary prudence, charged with the duties involved, would exercise under the same circumstances. *Ford v. Riverside City School Dist.* (1953) 121 Cal.App.2d 554, 263 P.2d 626 (hiding from playground teacher); *Tymkowicz v. San Jose Unified School Dist.* (1957) 151 Cal. App.2d 517, 312 P.2d 388 (no teacher in the yard); *Rodrigues v. San Jose Unified School Dist.* (1958) 157 Cal.App.2d 842, 322 P.2d 70 (handicapped boy climbing horizontal bars); *Woodsmall v. Mt. Diablo Unified School Dist.* (1961) 188 Cal.App.2d 262, 10 Cal.Rptr. 447; *Leibowitz v. Board of Education* (1952) 112 N.Y.S.2d 698 (children pushing on stairway); *Diamond v. Board of Education* (1958) 12 Misc.2d 47, 171 N.Y.S.2d 703 (fighting in school cafeteria). Duty has been otherwise expressed as being that which a parent of ordinary prudence would observe in comparable circumstances. *Hoose v. Drumm* (1939) 281 N.Y. 54, 22 N.E.2d 233 reh. den. 286 N.Y. 568, 35 N.E.2d 922." [Bracketed matter supplied]

**7.** *Beck v. San Francisco Unified School Dist.*, 225 Cal.App.2d 503, 37 Cal.Rptr. 471; *Decker v. Dundee Cent. School Dist.*, 4 A.D.2d 1008, 167 N.Y.S.2d 666, mod. on other grounds 4 N.Y.2d 462, 176 N.Y.S.2d 307, 151 N.E.2d 866; *Webber v. New York*, 30 A.D.2d 831, 292 N.Y. S.2d 574; *Stephens v. Jackson County Board of Education*, 244 N.C. 481, 94 S.E.2d 372; and

*Bruenn v. North Yakima School Dist.*, 101 Wash. 374, 172 P. 569.

**8.** *Titus v. Lindberg*, 49 N.J. 66, 228 A.2d 65, 38 A.L.R.3d 818, § 5[a]; *West v. Board of Education*, 8 A.D.2d 291, 187 N.Y.S.2d 88, rearg. and app. den. 9 A.D.2d 608, 191 N.Y.S.2d 130; *Cordaro v. Union Free School Dist.*, 14 A.D.2d 804, 220 N.Y.S.2d 656, aff'd 11 N.Y.2d 1038, 230 N.Y.S.2d 30, 183 N.E.2d 912; *Brittan v. State*, 200 Misc. 743, 103 N.Y.S.2d 485; *Bard v. Board of Education*, 140 N.Y.S.2d 850; and *Morris v. Douglas County School Dist.*, 241 Or. 23, 403 P.2d 775.

**9.** *Morris v. Ortiz*, 103 Ariz. 119, 437 P.2d 652, 35 A.L.R.3d 747; and *Weldy v. Oakland High School Dist.*, 19 Cal.App.2d 429, 65 P.2d 851.

**10.** *Enlow v. Illinois Cent. R. Co.*, 103 Ill.App.2d 269, 243 N.E.2d 847; and *Cirillo v. Milwaukee*, 34 Wis.2d 705, 150 N.W.2d 460.

**11.** *Ford v. Riverside City School Dist.*, 121 Cal. App.2d 554, 263 P.2d 626; *Tymkowicz v. San Jose Unified School Dist.*, 151 Cal.App.2d 517, 312 P.2d 388; *Rodrigues v. San Jose Unified School Dist.*, 157 Cal.App.2d 842, 322 P.2d 70; *Woodsmall v. Mt. Diablo Unified School Dist.*, 188 Cal.App.2d 262, 10 Cal.Rptr. 447; *Leibowitz v. Board of Education*, 112 N.Y.S.2d 698; and *Diamond v. Board of Education*, 12 Misc.2d 47, 171 N.Y.S.2d 703.

**12.** *Ferrill v. Board of Education*, 6 A.D.2d 690, 174 N.Y.S.2d 91, app. den. 6 A.D.2d 802, 175 N.Y.S.2d 304, motion den. 6 A.D.2d 880, 177 N.Y.S.2d 1014.

have a causal connection with the accident and resulting injury.[13]

In 38 A.L.R.3d, Public Schools—Torts—Supervision, at 843, it is observed that where there is a potential duty of supervision under the facts of the case, the question of whether the supervision was required may be considered one of fact for the jury [14] and a jury question is presented where the issue is whether adequate supervision has been furnished.[15]

■ Absent special dangerous circumstances, a school district does not have the duty of providing constant supervision of all movements of all pupils at all times.[16] We so held in *Fagan v. Summers*, Wyo., 498 P.2d 1227, 1228, in considering a closely supervised playground accident where no inherently dangerous circumstances were present. We said:

"There is no requirement for a teacher to have under constant and unremitting scrutiny all precise spots where every phase of play activities is being pursued; and there is no compulsion that general supervision be continuous and direct at all times and all places. *Segerman v. Jones*, 256 Md. 109, 259 A.2d 794, 805.

"In *Butler v. District of Columbia*, 135 U.S.App.D.C. 203, 417 F.2d 1150, 1152, the court considered it common knowledge, susceptible of judicial notice, that small boys may indulge in horseplay when a teacher's back is turned. And in *Ferreira*

*v. Sanchez*, 79 N.M. 768, 449 P.2d 784, 787, it was said:

" 'We must recognize the impossibility of a teacher supervising every minute detail of every activity * * * .' " [17]

*Potentially dangerous classroom-related activities:*

In 68 Am.Jur.2d, Schools, § 321, p. 635, it is said:

". . . But injured pupils have usually been successful in recovering from schools for injuries suffered during classes, apparently because pupils are normally subject to immediate supervision during such periods. Classroom-connected injuries have led to recovery *where the activity involved was inherently or potentially dangerous*, such as working with guns, operating shop machines, or learning to swim. . . ." [Emphasis supplied]

See, *Noland v. Colorado School of Trades, Inc.*, 153 Colo. 357, 386 P.2d 358; *Kirchner v. Yale University*, 150 Conn. 623, 192 A.2d 641; and *Morehouse College v. Russell*, 109 Ga.App. 301, 136 S.E.2d 179.

*Foreseeability:*

■ There can be no liability predicated upon lack or insufficiency of supervision where the event in connection with which the injury occurred was not reasonably foreseeable.[18] It is not, however, necessary

---

**13.** *Morris v. Ortiz*, 103 Ariz. 119, 437 P.2d 652, 35 A.L.R.3d 747, § 6[b].

**14.** *Rodrigues v. San Jose Unified School Dist.*, 157 Cal.App.2d 842, 322 P.2d 70; and *Cianci v. Board of Education*, 18 A.D.2d 930, 238 N.Y. S.2d 547.

**15.** *Ziegler v. Santa Cruz City High School District*, 168 Cal.App. 277, 335 P.2d 709, 713.

**16.** *Woodsmall v. Mt. Diablo Unified School Dist.*, 188 Cal.App.2d 262, 10 Cal.Rptr. 447; and *Conway v. Board of Education*, 11 Misc.2d 162, 171 N.Y.S.2d 533.

**17.** It is worthy of note—in the summary-judgment context—that while both this case and *Fagan* came here on appeal from a summary judgment, the instant matter is subject to the comparative-negligence statute, while the *Fagan* case was not.

**18.** The following cases are cited in 38 A.L.R.3d, Public Schools—Torts—Supervision, II. General principles, [c] Foreseeability of injury, fn. 1:

> *Luna v. Needles Elementary School Dist.*, 154 Cal.App.2d 803, 316 P.2d 773 (1957) (child injured climbing wall in violation of teacher's orders, when finger cut off by a gate); *Woodsmall v. Mt. Diablo Unified School Dist.*, 188 Cal.App.2d 262, 10 Cal.Rptr. 447 (1961) (pushing by fellow pupil); *Applebaum v. Board of Education*, 272 App.Div. 875, 71 N.Y.S.2d 140, aff'd 297 N.Y. 762, 77 N.E.2d 785 (1947) (opening windows on orders of teacher); *Bertola v. Board of Education*, 1 App.Div.2d 973, 150 N.Y.S.2d 831 (1956) (assault in classroom by fellow student); *West v. Board of Education*, 8 App.Div.2d 291, 187 N.Y.S.2d 88, reargued and appeal denied, 9 App.Div.2d 608, 191 N.Y.S.2d 130 (1959)

to prove that the very injury which occurred was foreseeable in order to establish that failure to provide necessary safeguards constituted negligence. It is sufficient if a reasonably prudent person would foresee that injury of the same general type would be likely to happen in the absence of such safeguards. See *Ziegler v. Santa Cruz City High School District*, 168 Cal.App.2d 277, 335 P.2d 709, 713, citing *Taylor v. Oakland Scavenger Co.*, 1941, 17 Cal.2d 594, 600, 110 P.2d 1044. Also, see *Beck v. San Francisco Unified School District*, 225 Cal.App.2d 503, 37 Cal.Rptr. 471.

That rule means that the plaintiffs here must show—not that Blankenship should have foreseen that Connett *would* use the alcohol as he did, but that 14-year-old 7th grade boys *might*, if confronted with these or similar circumstances, so misuse the flammable fluid and that injuries such as did occur would likely occur in the absence of adequate safeguards and supervision.

 In sum, we would observe that the school owes the student the duty to supervise his activities. This duty becomes more imperative in the classroom when risks of danger are foreseeable, and thus the degree of care higher, where young, inexperienced students are handling substances which—for them—are potentially dangerous.

Whether this duty of care is necessary, and whether it has been discharged in any given circumstance, is a jury question—unless, of course, the court can say, as a matter of law, that no material fact issue is present in a given case.

 In making this decision, the district court and the appellate court are charged with identical responsibilities and must view the facts most favorable to the appellant—while remembering that there can be

no summary judgment where an issue of material fact exists. In negligence cases, the question of negligence is one of fact for the jury to decide if the evidence respecting the negligence is in conflict, and we must be mindful that negligence issues do not often lend themselves to summary adjudication. This is particularly so where a comparative-negligence question is before the court because the comparative negligence will be examined as a fact issue so as to determine the contribution each party has made to the whole.

[11] We conclude here that there are present in this record issues of material fact which cannot be decided as questions of law.

Reversed.

(picking up bag with broken glass in it); *Silverman v. Board of Education*, 15 App. Div.2d 810, 225 N.Y.S.2d 77 (1962) (assault); *Cioffi v. Board of Education*, 27 App.Div.2d 826, 278 N.Y.S.2d 249 (1967) (ice-ball throwing); *Diamond v. Board of Education*, 12 Misc.2d 47, 171 N.Y.S.2d 703 (1958) (pupil crowding); *Barbato v. Board of Education*, 17 Misc.2d 65, 182 N.Y.S.2d 875 (1959) (fall); *Nestor v. New York*, 28 Misc.2d 70, 211 N.Y.

S.2d 975 (1961) (player injured by swinging bat of playmate, while teacher was engaged in distributing food to children nearby); *Ferraro v. Board of Education*, 32 Misc.2d 563, 212 N.Y.S.2d 615, aff'd 14 App.Div.2d 815, 221 N.Y.S.2d 279 (1961) (assault); and *Gordon v. Deer Park School Dist.*, 71 Wash.2d 119, 426 P.2d 824 (1967) (bat slipping from teacher's hands and flying back instead of forward, as is usual).